THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DANIEL R. SMITH, Defendant-Appellant.

Second District (2nd Division)    No. 76-1

Opinion filed January 10, 1977.

Ralph Ruebner and Andrew Berman, both of State Appellate Defender's Office, of Elgin, for appellant.

Gerry L. Dondanville, State's Attorney, of Geneva (Phyllis J. Perko, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

The defendant was convicted of armed robbery and sentenced to a term of not less than 5 nor more than 10 years in the penitentiary.

He appeals on the grounds (1) that the evidence was not sufficient to convict him beyond a reasonable doubt; (2) that the sentence was excessive in view of the fact that one of the other two defendants involved with him in the robbery received a sentence of not less than 1 nor more than 3 years in the penitentiary and the other was given probation and a fine of $1,000.

The defendant's contention that the evidence was not sufficient to convict him beyond a reasonable doubt is based on the fact that the victim did not positively identify the defendant but only said he was "80% sure" the defendant was one of the three robbers. The victim, Howard Sutherland, testified that a car drove into the service station where he worked a little before 9 p.m., possibly about 8:45, on October 10, 1974. There were two men in the front seat and one in the rear seat. The driver was a white man and the other two were black men. The driver ordered one dollar's worth of gas and when Sutherland had pumped that amount and approached the passenger side of the car to receive the one dollar the passenger asked him to get a package of cigarettes, then suddenly showed him a revolver and demanded all of Sutherland's money. Sutherland testified the man in the back seat did not speak and he only saw him briefly just before the gun was produced by the passenger in the front seat. He testified, however, that he did get a momentary glimpse of the man in the back seat and that he was black, heavy set, wearing his hair "Afro" style and was wearing a light colored shirt. At the trial, upon cross-examination, the question was asked by defense counsel:

> "Now, when you picked out the picture that you say was the man in the back seat from the group that police officers showed you, what did you say to them? Do you remember, exactly?"

To which Sutherland replied, "I told 'em I was 80% sure it was him." Upon repetition of the question, Sutherland repeated he was "80% sure."

The defendant in this appeal argues that given the fleeting opportunity the victim had to observe the defendant in the back seat, with poor lighting conditions in the station and the pressure Sutherland was under at the moment, it was not probable his identification could be satisfactory

even if he *was* sure and under the circumstances an admitted 20% possibility of mistaken identification is sufficient to raise a reasonable doubt as to the defendant's presence at the robbery.

Corroboration as to the defendant's participation in the robbery was provided, however, by the testimony of a witness by the name of Vonck. Vonck testified he was the attendant at another service station a mile or two distant from Sutherland's station. On the night in question at approximately 8:15, he testified, three men drove into the station in an automobile answering the same description as that given by Sutherland. They were two black men and a white man, the white man driving, and a heavy set black man sitting in the rear seat. Vonck testified he was acquainted with the black man in the front seat, having known him in high school. He said that the defendant (the man in the back seat) quizzed him about the station and asked him if he had ever been robbed. He (the defendant) then asked Vonck if he had ever thought about throwing some money into the car and claiming he had been robbed, then splitting the money later. Vonck answered he had not considered it and was not going to. One of the others then told him they were going to rob him; however, they did not attempt to do so—Vonck testified he thought they did not carry it out because he knew one of them. The defendant then asked what Vonck would do if they pulled a gun on him, to which Vonck replied he would probably not give them any money. The defendant then showed Vonck a gun. After some further intimidating remarks the defendant asked what other gas stations were open in the area. Vonck mentioned a couple of gas stations, one of which was Clark's, the station where Sutherland worked. After asking for some free gas and being refused the three then drove off in the direction of Sutherland's station. Vonck definitely identified the defendant as the man who was in the back seat and who showed him the gun and suggested that he cooperate in the simulated robbery.

The defendant, testifying on his own behalf, denied he had participated in the robbery and claimed he had been in a YMCA hotel room with two friends at the time of the robbery (although he did not produce the two friends) and then later had attended a musical concert at a nearby hotel. Moreover, he testified that he had approached Sutherland a week or so after he had learned Sutherland had identified him as one of the robbers and that Sutherland admitted he had never seen him before. Sutherland's testimony on this point is that defendant drove into the station one evening, a couple of weeks after the robbery, and asked him if he had picked out his (defendant's) picture. Sutherland stated that he "denied it" but that "he [defendant] kept bothering me for awhile until I admitted that I did turn it in, that I did pick it out."

■■ On the basis of what has been related above we think there was

sufficient evidence for the jury to have found the defendant guilty beyond a reasonable doubt. While no robbery occurred at the station where Vonck was employed, Vonck's testimony indicated a clear pattern or plan of action by the defendant and his companions to scout out a gas station and rob it. Vonck positively identified the defendant as the man who had suggested Vonck participate in a pretended robbery and that the defendant had casually shown him a revolver during the conversation. There is no doubt that the group which approached Vonck was the same one that robbed Sutherland. Vonck testified they inquired as to the whereabouts of another service station when they left and they headed in the direction of Sutherland's station. The defendant did not produce any witnesses to verify his alibi and the positive identification by Vonck, plus the "80% sure" identification by Sutherland were, we think, sufficient to justify the jury's finding of guilty.

■■ The defendant further contends his sentence of not less than 5 nor more than 10 years in the penitentiary was excessive when viewed in the light of the disposition of the other two defendants. He points out he had at most only a passive role in the robbery being guilty, if at all, only of aiding and abetting the robbery by his presence and cooperation but not wielding a weapon or actively participating in any way. Yet, he says, he received a comparatively severe sentence which he claims was the result of his election to stand on his rights, plead not guilty and demand a jury trial. The difference in punishment is, of course, rationalized by the State on the ground that the other two were not convicted by a jury but by pleading guilty to simple robbery, were not subject to the same punishment as the defendant, who was convicted of armed robbery. While the State is technically correct we feel the punishment meted out to the defendant could be considered somewhat harsh under the circumstances. Actually, they all committed the same crime of armed robbery. The defendant by his conviction for the crime of armed robbery is subject to a mandatory minimum term of four years in the penitentiary as is set by statute. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(2).) In view of the sentences given the other defendants, however, we are inclined to modify the defendant's sentence and we hereby reduce it to not less than the mandatory four years nor more than six years in the penitentiary.

As so modified, the judgment of the circuit court of Kane County is affirmed.

Sentence modified, judgment affirmed.

GUILD, P. J., and SEIDENFELD, J., concur.